**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Levanna C. Traylor; et al., | No. CV-08-0918-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Avnet, Inc.; Avnet Pension Plan, | |
| Defendants. | |

The court has before it defendants' motion for partial dismissal (doc. 66), plaintiffs' response (doc. 70), and defendants' reply (doc. 73).

Plaintiffs are former employees of Avnet, Inc., and participants in the Avnet Pension Plan ("Plan") (collectively, "Avnet"). They contend that Avnet violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, by calculating participants' lump sum distributions without a "whipsaw calculation," resulting in an underpayment of retirement benefits. They also allege that Avnet violated ERISA by denying other participants the opportunity to elect lump sum distributions and by breaching its fiduciary duty to provide statutorily-required disclosures.

**I. Background**

There are two basic kinds of pension plans under ERISA. Under a defined contribution plan, such as a 401(k) plan, the accrued benefit is "the balance of the

1  individual's account." 29 U.S.C. § 1002(23)(B). In contrast, a participant's accrued benefit
2  in a defined benefit plan is generally "expressed in the form of an annual benefit
3  commencing at normal retirement age," in other words an annuity. Id. § 1002(23)(A). If
4  lump sum distributions are permitted under a defined benefit plan, the accrued benefit is the
5  actuarial equivalent of the annual benefit. Id. § 1054(c)(3).

6  Cash balance plans are a hybrid form of a defined benefit plan. They resemble
7  defined contribution plans in that a "hypothetical" account is established in each participant's
8  name. They resemble defined benefit plans in that plan participants are guaranteed a defined
9  benefit and bear no investment risk. Contributions to cash balance plans are generally based
10 on two factors: (1) the employer's contributions, usually based on a percentage of salary
11 ("compensation credits"), and (2) earnings, based on rates set by the plan ("interest credits").
12 Compensation credits end once a participant terminates employment with the plan sponsor,
13 but the interest credits continue until the participant withdraws his benefit.

14 In 1993, Avnet amended the Plan to convert it from a traditional defined benefit plan
15 to a cash balance plan effective January 1, 1994. Avnet froze accruals under the old Plan as
16 of December 31, 1993, and converted those accruals into a "Cash Balance Account," which
17 became the opening balance of the new Plan for years of service beginning January 1, 1994.
18 The pre-1994 Plan calculated and paid participants an annual benefit commencing at normal
19 retirement. There was no lump sum distribution option. The amended plan, however, gave
20 participants the option to receive their benefits in the form of a single lump sum payment.
21 Plaintiffs allege that on or about March 23, 1994, Avnet again amended the Plan in order to
22 limit a participant's right to elect a lump sum distribution. Specifically, section 6.10 was
23 added to eliminate a participant's right to receive a lump sum distribution if the present value
24 of his pre-1994 retirement benefit was greater than his Cash Balance Account. Response,
25 exhibit A-1, § 6.10 (hereinafter "Plan").

26 Plaintiffs Traylor, Moses, Coy, and Moriarty terminated their employment with Avnet
27 between 2001 and 2005 and elected to receive pre-retirement lump sum distributions of their
28 Plan benefits ("Lump Sum Plaintiffs"). These plaintiffs allege that their lump sum payments

1 were incorrectly calculated because the Plan administrator failed to make a required
2 "whipsaw calculation" in violation of ERISA, resulting in an underpayment of retirement
3 benefits. Plaintiffs Phillips, Small, Cohen, and Dison allege that in 1994, they terminated
4 their employment with Avnet and were denied the opportunity to elect lump sum payments
5 based on Avnet's improper application of section 6.10 of the Plan ("Restricted Plaintiffs").

## II. Whipsaw Calculation

7       Before August, 2006, if a defined benefit plan offered a lump sum payment option,
8 the lump sum amount was always the actuarial equivalent of the individual's accrued benefit.
9 29 U.S.C. § 1054(c)(3). To determine the actuarial equivalent, the current account balance
10 is projected to the individual's normal retirement age, i.e., 65, using the interest credit rates
11 set forth in the plan ("interest rate"). This amount is then discounted back to its present value
12 using a variable interest rate prescribed by ERISA and the Internal Revenue Code ("IRC")
13 ("discount rate"). 29 U.S.C. § 1053; 26 U.S.C. § 417(e). For example, if a participant retires
14 at the age of 50 and requests a lump sum distribution, the plan administrator must apply a
15 projection rate based on the interest the participant would otherwise have received at age 65,
16 and then apply the discount rate established by § 417(e) to determine the present value of that
17 annuity at the time of disbursal. This two-step process is known as the whipsaw calculation.
18 If a plan's interest rate is higher than the statutory discount rate, the resulting lump sum
19 benefit will be greater than the employee's account balance at the time of the distribution.
20 Some have contended that this whipsaw effect produces an unintended windfall at the
21 expense of other plan participants. See, e.g., Esden v. Bank of Boston, 229 F.3d 154, 162
22 (2d Cir. 2000).

23       Despite the arguable inequity resulting from the whipsaw calculation, Congress and
24 courts consistently imposed this ERISA obligation until August, 2006 when Congress
25 enacted the Pension Protection Act of 2006 ("PPA"), Pub. L. No. 109-280, 120 Stat. 780.
26 The PPA was intended, in part, to address the treatment of cash balance plans under the
27 ERISA statutory framework, and to eliminate the whipsaw effect. The PPA provides that
28 cash balance plans are not required to perform the whipsaw calculation when determining

1 lump sum distributions. Specifically, the PPA provides that defined benefit plans will not
2 be treated as failing to meet ERISA requirements solely because the present value of an
3 accrued benefit is deemed equal to the amount expressed as the balance in a participant's
4 hypothetical account. 29 U.S.C. § 1053(f) (2006); 26 U.S.C. § 411(a)(13) (2006) ("anti-
5 whipsaw provisions").

### III. Whipsaw Claim–Traylor, Moses, Coy and Moriarty

7 The Lump Sum Plaintiffs contend that their lump sum distributions, occurring
8 between 2001 and 2005, were improperly reduced because Avent failed to apply the whipsaw
9 calculation. Avnet argues that plaintiffs' claims are barred by the PPA's anti-whipsaw rule.

10 The PPA expressly provides that these rules "shall apply to distributions made after
11 the date of the enactment of this Act," which was August 17, 2006. PPA § 701(e)(2). This
12 language compels the conclusion that the effect of the PPA is prospective only. Lockheed
13 Corp. v. Spink, 517 U.S. 882, 897, 116 S. Ct. 1783, 1793 (1996) ("When Congress includes
14 a provision that specifically addresses the temporal effect of a statute, that provision trumps
15 any general inferences that might be drawn from the substantive provisions of the statute.").
16 Apparently recognizing that Congress expressly rejected a retroactive application of the PPA,
17 Avnet contends that it is seeking prospective application only. It argues that because the
18 PPA's anti-whipsaw provisions "apply to distributions made after the date of the enactment
19 of this Act," the additional payments that plaintiffs now seek constitute "distributions" from
20 the Plan made after the effective date of the PPA, which are therefore subject to, and
21 foreclosed by, the PPA's anti-whipsaw provisions.

22 ERISA does not define "distribution." Avnet urges a broad, "plain meaning"
23 definition, whereby any payment of money from plan funds to a plan beneficiary, for
24 whatever reason, even to correct a pre-PPA error, constitutes a "distribution" that need not
25 include a whipsaw calculation. Motion at 11.

26 The only court that has addressed this issue rejected this same argument. In West v.
27 AK Steel Corp., 484 F.3d 395, 412 (6th Cir. 2007), the court held that the monetary relief
28 sought by the plaintiffs "is not a new 'distribution' under a retirement plan as contemplated

- 4 -

1 by the PPA, but retrospective relief for a past violation of the law as it stood at the time of
2 the distribution."  To hold otherwise, the court reasoned, would result in a retroactive
3 application of the PPA despite specific statutory language to the contrary.  Id.  The court
4 concluded that "the PPA is not retroactive in application" and therefore "it has no effect" on
5 whether a whipsaw payment should be made to a participant who received a lump sum
6 payment before the PPA's enactment.  Id.

7 We agree with the conclusion reached by AK Steel.  Plaintiffs do not seek a new
8 "distribution" of a retirement benefit as contemplated by ERISA, but a correction of a pre-
9 PPA miscalculation of benefits.  Avnet cannot avoid liability for pre-PPA ERISA violations
10 by relying on a statute that has no retroactive effect.  We conclude that the PPA does not bar
11 plaintiffs' whipsaw claims.

12 **IV.  Exhaustion of Remedies**–Phillips, Small, Cohen and Dison

13 The Restricted Plaintiffs contend that they were improperly denied the option to elect
14 a lump sum distribution of their retirement benefits when they terminated their employment
15 with Avnet in 1994.  They also claim that the Plan originally granted an unrestricted right to
16 elect a lump sum payment, but later limited that right in a March 1994 amendment to the Plan
17 in violation of ERISA's anti-cutback provision.  29 U.S.C. § 1054(g)(2)(B).  Avnet moves
18 to dismiss these claims for plaintiffs' failure to exhaust administrative remedies.

19 Although ERISA does not have a statutory provision requiring exhaustion of
20 administrative remedies, the Ninth Circuit has consistently held that before bringing an action
21 in federal court, an ERISA plaintiff claiming a denial of benefits "must avail himself or
22 herself of a plan's own internal review procedures."  Vaught v. Scottsdale Healthcare Corp.
23 Health Plan, 546 F.3d 620, 626 (9th Cir. 2008) (quotation omitted).  However, there are
24 recognized exceptions to the exhaustion requirement.  An ERISA plaintiff need not exhaust
25 administrative remedies if the remedies are not available, or if pursuing those remedies would
26 be futile.  Id.  Moreover, exhaustion "is not required where the issue is whether a violation
27 of the terms or provisions of the statute has occurred."  Fujikawa v. Gushiken, 823 F.2d

1   1341, 1345 (9th Cir. 1987); Amaro v. Continental Can Co., 724 F.2d 747, 751-52 (9th Cir.
2   1984).

3   The Restricted Plaintiffs argue that their claim relates solely to statutory interpretation
4   and therefore does not require exhaustion. They contend that their claim is essentially the
5   same as that presented by the Lump Sum Plaintiffs—namely, whether Avnet violated ERISA
6   by equating a participant's "Cash Balance Account" (i.e., his retirement benefit) with his
7   current account value.[1]

8   On the one hand, the Plan provides that the amount of a participant's lump sum
9   distribution is equal to his "Cash Balance Account." Plan § 5.1. As previously discussed,
10  the Lump Sum Plaintiffs contend that Avnet improperly reduced their distribution by
11  equating the term "Cash Balance Account" with their current account value (i.e., without a
12  whipsaw calculation). Similarly, the Restricted Plaintiffs argue that Avnet improperly
13  equated "Cash Balance Account" with their current account balance when it denied their
14  eligibility to elect a lump sum distribution. The Plan provides that a participant is not eligible
15  to "receive a distribution of his Cash Balance Account," (i.e., a lump sum distribution) if "the
16  Actuarial Equivalent of the Pre-1994 Retirement Benefit . . . is greater than his Cash Balance
17  Account." Plan § 6.10(B). The Restricted Plaintiffs claim that if Avnet had calculated their
18  "Cash Balance Account" in accordance with ERISA, (i.e., increased by a whipsaw
19  calculation) they would have been eligible for a lump sum distribution.

20  In both instances, the question is whether ERISA requires the application of a
21  whipsaw calculation using federally prescribed rates in determining a participant's Cash
22  Account Balance. This is not a challenge to the exercise of a plan administrator's
23  discretionary authority, but instead is a matter of statutory interpretation that does not require
24  exhaustion.

25  We also conclude that plaintiffs' anti-cutback claim does not require exhaustion.
26  ERISA provides that a participant's accrued benefit under a plan may not be decreased by

27
28  [1]Avnet does not argue that the Lump Sum Plaintiffs' claims require exhaustion.

- 6 -

1   a plan amendment. 29 U.S.C. § 1054(g)(1). This prohibition applies to the "eliminati[on]
2   of an optional form of benefit." 29 U.S.C. § 1054(g)(2)(B). The Restricted Plaintiffs
3   contend that Avnet violated the anti-cutback provision by amending the Plan in March 1994
4   to limit a participant's option to elect a lump sum distribution.

5       Generally, an anti-cutback claim seeks to enforce specific statutory requirements
6   under ERISA and thus does not require exhaustion. See Fujikawa, 823 F.2d at 1345; Goodin
7   v. Innovative Tech. Solutions, Inc., 489 F. Supp. 2d 1157, 1162-63 (D. Haw. 2007). Avnet,
8   however, argues that a factual issue exists regarding the effective date of the new 1994 Plan
9   and the March 1994 amendment. Accordingly to Avnet, Plan amendments only take effect
10  upon approval by the board of directors. It asserts that there is evidence that the Avnet board
11  of directors approved the new 1994 Plan and the March 1994 amendment on the same
12  date—March 23, 1994—and therefore there is no anti-cutback violation. Reply at 8.

13      A determination of when the board of directors approved the Plan amendments,
14  although a question of fact, does not trigger the need for exhaustion. Plaintiffs' anti-cutback
15  claim is not brought to enforce the terms of the Plan, but instead seeks to enforce rights
16  granted by ERISA. Such claims do not require exhaustion. See Zipf v. American Tel. and
17  Tel. Co., 799 F.2d 889, 891 (3d Cir. 1986).

### V. Conclusion

19  **IT IS ORDERED DENYING** Avnet's motion for partial dismissal (doc. 66).
20  DATED this 13th day of February, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

- 7 -