1   D. Lewis Clark, Jr. (Arizona Bar # 025968)
2   Brian A. Cabianca (Arizona Bar # 016410)
    Squire, Sanders & Dempsey L.L.P.
3   Two Renaissance Square
    40 North Central Avenue, Ste 2700
4   Phoenix, Arizona  85004-4498
5   (602) 528-4000
    (602) 253-8129 (facsimile)
6   lclark@ssd.com
    bcabianca@ssd.com
7

8   Robert D. Wick (*Pro Hac Vice*)
    Frederick G. Sandstrom (*Pro Hac Vice*)
9   Covington & Burling LLP
10  1201 Pennsylvania Avenue, N.W.
    Washington, D.C.  20004
11  (202) 662-5487
    (202) 778-5487 (facsimile)
12  rwick@cov.com

13
    *Attorneys for Defendants Avnet, Inc. and the Avnet Pension Plan*
14

15              IN THE UNITED STATES DISTRICT COURT
16
17              FOR THE DISTRICT OF ARIZONA

18
    Levanna C. Traylor; Kevin R. Moses;        No. 08-cv-00918-PHX-FJM
19  James Frederic Coy; Gwyn M.
20  Moriarty; Linda M. Phillips; Thomas G.
    Small; Dwayne E. Cohen; Steve A.
21  Dison; Paul Gillespie, on their behalf     **DEFENDANTS' MOTION**
    and on behalf of all others similarly      **FOR SUMMARY**
22  situated,                                  **JUDGMENT AND**
                                               **SUPPORTING**
23                                             **MEMORANDUM OF LAW**
              Plaintiffs,
24

25          vs.

26  Avnet, Inc.; Avnet Pension Plan,

27            Defendants.

28

1

# TABLE OF CONTENTS

2

**Page**

3

4

I.    The Claims Of The Lump Sum Class Are Time-Barred. ...........................................1

5

    A.  The Lump Sum Claims Accrued No Later Than The Date Of Each
        Class Member's Lump Sum Payment....................................................................1

6

    B.  A One-Year Limitations Period Applies..............................................................5

7

8

        1.  A One-Year Limitations Period Applies To Claims For Breach Of
            Employment Contract........................................................................6

9

        2.  A One-Year Limitations Period Applies To Statutory Claims. .....................8

10

11

        3.  For Certain Class Members, A One-Year Limitations Period Is
            Fixed By Contract. ...........................................................................9

12

II.   The Restricted Participant Claims Lack Merit. .....................................................10

13

    A.  Plaintiffs' Claims Are Time-Barred...................................................................10

14

    B.  The Restricted Participant Claims Fail On The Merits......................................11

15

16

    C.  Plaintiffs' Claims Fail For Lack Of Causation And Injury................................13

17

    D.  Individuals For Whom No Eligibility Determination Was Made Are
        Not Class Members. ..........................................................................................16

18

Conclusion ....................................................................................................................17

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Adamson v. Armco, Inc.*,
    44 F.3d 650 (8th Cir. 1995) ....................................................................... 6, 7

*Berger v. AXA Network LLC*,
    459 F.3d 804 (7th Cir. 2006) ......................................................................... 5

*Berry v. Allstate Ins. Co.*,
    252 F. Supp. 2d 336 (E.D. Tex. 2003) ........................................................... 4

*Bilello v. JPMorgan Chase Ret. Plan*,
    607 F. Supp. 2d 586 (S.D.N.Y. 2009).......................................................... 11

*Blanton v. Anzalone*,
    760 F.2d 989 (9th Cir. 1985) ......................................................................... 4

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999).......................................................................... 16

*Burrey v. Pac. Gas & Elec. Co.*,
    159 F.3d 388 (9th Cir. 1998) ....................................................................... 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................... 15

*Cent. Wesleyan College v. W.R. Grace & Co.*,
    6 F.3d 177 (4th Cir. 1993) ........................................................................... 16

*Chuck v. Hewlett Packard Co.*,
    455 F.3d 1026 (9th Cir. 2006) ................................................................... 1, 6

*Cooley v. S. Graphic Sys., Inc., Pension Plan*,
    No. 3:06CV-1-H, 2008 U.S. Dist. Lexis 27730 (W.D. Ky. Apr. 4, 2008) ................... 2

*Daniels v. Life Ins. Co. of N. Am.*,
    No. 5:08-CV-137-R, 2009 U.S. Dist. Lexis 17229 (W.D. Ky. Mar. 6, 2009).............. 8

*Doe v. Blue Cross & Blue Shield*,
    112 F.3d 869 (7th Cir. 1997) ....................................................................... 10

*Drutis v. Rand McNally & Co.*,
    499 F.3d 608 (6th Cir. 2007) ....................................................................... 13

*Fallar v. Compuware Corp.*,
202 F. Supp. 2d 1067 (D. Ariz. 2002) ............................................................... 7

*Fallin v. Commonwealth Indus. Cash Balance Plan*,
521 F. Supp. 2d 592 (W.D. Ky. 2007) ............................................................ 2, 8

*Flagg v. Skadden, Arps Pension Plan*,
No. 07 Civ. 7392 (PKC), 2008 U.S. Dist. Lexis 47613 (S.D.N.Y. June 18,
2008), *adhered to on reconsideration*, 2008 U.S. Dist. Lexis 54783 (July 16,
2008) ............................................................................................................... 2, 3

*Ford v. Uniroyal Pension Plan*,
154 F.3d 613 (6th Cir. 1998) ............................................................................ 14

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982) ........................................................................................... 16

*Gregorovich v. E.I. du Pont de Nemours*,
602 F. Supp. 2d 511 (D. Del. 2009) .................................................................... 2

*Hirt v. Equitable Ret. Plan*,
285 F. App'x 802 (2d Cir. 2008) ........................................................................ 11

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
213 F.3d 124 (3d Cir. 2000) .............................................................................. 14

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) ............................................................................... 5

*In re J.P. Morgan Chase Cash Balance Litig.*,
255 F.R.D. 130 (S.D.N.Y. 2009) ....................................................................... 16

*Joseph Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*,
3 F.3d 994 (7th Cir. 1993) ................................................................................... 6

*Kendall v. Employees Ret. Plan of Avon Prods.*,
561 F.3d 112 (2d Cir. 2009) .............................................................................. 13

*Lester v. Framatome ANP*,
No. 6:06cv00015, 2008 U.S. Dist. Lexis 19131 (W.D. Va. Mar. 12, 2008) ........... 7, 10

*Loewy v. Ret. Comm.*,
No. 03-CV-2284-PHX-FJM (D. Ariz. Mar. 30, 2005) ....................................... 8, 9

*Lyell v. Farmers Group Inc. Employees' Pension Plan*,
No. CV 07-1576-PHX-JAT, 2008 U.S. Dist. Lexis 107332 (D. Ariz. Dec. 3,
2008) ................................................................................................................... 17

*Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*,
    856 F.2d 1418 (9th Cir. 1988) ................................................................. 4

*Med. Mut. of Ohio v. k. Amalia Enters.*,
    548 F.3d 383 (6th Cir. 2008) ................................................................. 9

*Miller v. Fortis Benefits Ins. Co.*,
    475 F.3d 516 (3d Cir. 2007)................................................................ 2, 5

*Moody v. Turner Corp.*,
    No. 1:07-cv-692 (S.D. Ohio Aug. 6, 2008) ....................................... 2, 3, 4, 5

*Morrison v. Marsh & McLennan Cos.*,
    439 F.3d 295 (6th Cir. 2006) ................................................................. 1

*Newton v. Thomason*,
    22 F.3d 1455 (9th Cir. 1994) ................................................................. 5

*Northlake Reg'l Med. Ctr. v. Waffle House Sys. Benefit Plan*,
    160 F.3d 1301 (11th Cir. 1998) ............................................................. 10

*Pierce County Hotel Employees v. Elks Lodge*,
    827 F.2d 1324 (9th Cir. 1987) ................................................................. 5

*Pisciotta v. Teledyne Indus., Inc.*,
    91 F.3d 1326 (9th Cir. 1996) ................................................................. 14

*Poulos v. Caesars World, Inc.*
    379 F.3d 654 (9th Cir. 2004) ................................................................. 16

*Redmon v. Sud-Chemie Inc. Ret. Plan*,
    547 F.3d 531 (6th Cir. 2008) ......................................................... 5, 7, 8, 9

*Romero v. Allstate Corp.*,
    404 F.3d 212 (3d Cir. 2005)................................................................. 11

*Sakamoto v. Duty Free Shoppers, Ltd.*,
    764 F.2d 1285 (9th Cir. 1985) ................................................................. 8

*Syed v. Hercules, Inc.*,
    214 F.3d 155 (3d Cir. 2000)........................................................... 6, 7, 10

*Travis v. Knappenberger*,
    204 F.R.D. 652 (D. Or. 2001) ................................................................. 4

*Wang Labs., Inc. v. Kagan*,
    990 F.2d 1126 (9th Cir. 1993) ............................................................. 5, 9

*Wetzel v. Lou Ehlers Cadillac Group*,
222 F.3d 643 (9th Cir. 2000) (en banc) .......................................................... 5

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
321 F.3d 933 (9th Cir. 2003) ...................................................................... 12

*Wright v. Heyne*,
349 F.3d 321 (6th Cir. 2003) ...................................................................... 4

**STATE CASES**

*Day v. Schenectady Disc. Corp.*,
611 P.2d 568 (Ariz. Ct. App. 1980) .............................................................. 8

*Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi*,
183 P.3d 544 (Ariz. Ct. App. 2008) ...................................................... 6, 7, 8

*Taylor v. Graham County Chamber of Comm.*,
33 P.3d 518 (Ariz. Ct. App. 2001) ............................................................... 8

*W.J. Kroeger Co. v. Travelers Indem. Co.*,
541 P.2d 385 (Ariz. 1975) .......................................................................... 6

**FEDERAL STATUTES**

ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3) .................................................. 12

**STATE STATUTES**

Ariz. Rev. Stat. § 12-541 (1995) .................................................................. 8

Ariz. Rev. Stat. § 12-541(3) (2009) ......................................................... 6, 7, 8

Ariz. Rev. Stat. § 12-541(5) (2009) ........................................................... 8, 9

Ariz. Rev. Stat. § 12-548 (2009) .................................................................. 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to Fed. R. Civ. P. 56, Defendants move for summary judgment on the ground that (1) the claims of both the Lump Sum Class and the Restricted Participant Class are time-barred, and (2) the Restricted Participant claims fail as a matter of law.

**Memorandum Of Law**

## I.   The Claims Of The Lump Sum Class Are Time-Barred.

The Lump Sum Class alleges that their lump sum payments were too small because lump sum payments were not calculated by means of a "whipsaw" calculation.  Defendants showed in their cross-motion for judgment on the pleadings that these claims fail on the merits.  (Dkt. 136.)  As shown below, the lump sum claims are time-barred as well.

The statute of limitations began running on the lump sum claims on the date that each class member received his or her lump sum payment.  Moreover, each class member's claim is governed by a one-year limitations period that is either borrowed from Arizona law or in some instances fixed by contract.  Because this suit was filed as much as thirteen years after class members received their lump sum payments – and in all cases more than a year after the receipt of those payments – the lump sum claims are time-barred.

### A.   The Lump Sum Claims Accrued No Later Than The Date Of Each Class Member's Lump Sum Payment.

An ERISA benefits claim accrues, and the limitations period begins to run, "when a pension plan communicates 'a clear and continuing repudiation'" of the claim.  *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006) (quotation omitted).  Denial of a formal application for benefits is not necessary to satisfy this standard; rather, it is enough if the claimant "could not have reasonably believed but that his benefits had been 'finally denied.'"  *Id.* at 1031, 1033, 1038.  *See also Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 302 (6th Cir. 2006) ("[A] clear

and unequivocal repudiation of benefits . . . is adequate to commence accrual, regardless of whether the repudiation is formal or not.").

In cases alleging that a pension plan has underpaid a lump sum distribution of benefits, courts consistently hold that a "clear repudiation" takes place at the time of the lump sum payment. *See, e.g.*, *Fallin v. Commonwealth Indus. Cash Balance Plan*, 521 F. Supp. 2d 592, 597 (W.D. Ky. 2007). By its very nature, a lump sum payment constitutes the sole benefit that the plan intends to provide and repudiates any intent to provide a larger benefit. *See id*. The court in *Fallin* thus explained:

> Here, there can be no question that Plaintiffs received "clear and unequivocal" notice of the amount of benefits they would be receiving no later than when they received their lump-sum distributions. Any expectation of a sum greater than what was received was "repudiated" at that time, and could not reasonably have been maintained beyond that point. Plaintiffs received no further payments or indication that further payments would be forthcoming during the years between the lump-sum payments and the filing of this action.

*Id*. *Accord Moody v. Turner Corp.*, No. 1:07-cv-692, Dkt. 25, at 26 (S.D. Ohio Aug. 6, 2008) (whipsaw claim accrued on date of plaintiff's lump sum payment) (attached hereto as Sandstrom Decl., Ex. F); *Flagg v. Skadden, Arps Pension Plan*, No. 07 Civ. 7392 (PKC), 2008 U.S. Dist. Lexis 47613, at *9-12 (S.D.N.Y. June 18, 2008) (whipsaw claim accrued upon receipt of lump sum payment and accompanying letter indicating that the lump sum represented the full payment to be made by the plan), *adhered to on reconsideration*, 2008 U.S. Dist. Lexis 54783, at *3 (July 16, 2008); *Cooley v. S. Graphic Sys., Inc., Pension Plan*, No. 3:06CV-1-H, 2008 U.S. Dist. Lexis 27730, at *1-2 (W.D. Ky. Apr. 4, 2008) (lump sum underpayment claim accrued on date that lump sum check was issued to plaintiff). *See also Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. 2007) ("Like a denial, an underpayment is adverse to the beneficiary and therefore repudiates his rights under a plan."); *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 517 (D. Del. 2009) (same).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Flagg* and *Moody* are indistinguishable from this case.  Both cases involved whipsaw claims brought against cash balance plans by the same lawyer who filed this action.  In *Flagg*, the court held that a clear repudiation occurred, and the statute of limitations began running, on the date the plaintiff received her lump sum payment and an accompanying letter indicating that the payment was in "full settlement" of her rights under the plan.  *See* 2008 U.S. Dist. Lexis 47613 at *2, *12; 2008 U.S. Dist. Lexis 54783 at *3.  In *Moody*, the court likewise held that the statute of limitations began running on the date of the plaintiff's lump sum payment:

> The Court finds that [plaintiff's] claim accrued when he was paid his lump sum benefit.  The Plan's repudiation of any further payment was unequivocal at that time, as the plan terms plainly state that he was entitled to receive his hypothetical account balance.  The fact that ERISA requirements for cash balance plans may be complicated does not prevent the accrual of [plaintiff's] claim.  To hold otherwise would effectively eviscerate any operative statute of limitations, and permit the assertion of clearly stale claims.

*Moody*, Sandstrom Decl., Ex. F, at 26.

The record in this case further cements the conclusion that the lump sum payments made to Plaintiffs clearly repudiated any intent to provide them with a larger benefit.  First, the Plan specifically told participants that if they elected a lump sum payment, "we will pay your *entire* accrued benefit in one lump sum."  Statement of Facts ("Stmt.") ¶¶ 46-47 (emphasis added).  Second, in the course of electing a lump sum payment, each Plaintiff checked a box on a benefit election form indicating that they would like their "total distribution" from the Plan to be provided as a lump sum payment.  *Id*. ¶¶ 49-50.  Third, Plaintiffs all acknowledged at their depositions that, at the time they received their lump sum payments, they knew and understood that the Plan had no intention of paying them anything more.  *Id*. ¶¶ 27-31.  Indeed, as Plaintiffs themselves have argued in this litigation, the Plan "always" has been clear

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that lump sum distributions would be equal to – not greater than – a participant's account balance. *Id*. ¶ 28; *see also id*. ¶¶ 32-50. Plaintiffs' claims for a lump sum payment greater than their account balances thus accrued at the time they received their lump sum payments.

Plaintiffs presumably will contend – as they did in the Southern District of Ohio – that the statute of limitations did not begin running until they consulted a lawyer and discovered the *legal* basis under ERISA for claiming that they had been underpaid. *See* Dkt. 37 at 4-6. Under black letter law, however, Plaintiffs' alleged lack of knowledge of the legal theory underlying their claim does not toll the running of the statute of limitations. *See, e.g.*, *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988) (holding in an ERISA benefits underpayment case that the "'statute of limitations is triggered by [a claimant's] knowledge of the transaction that constituted the alleged violation, not by [his] knowledge of the law'") (quoting *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985)).[1] Any other approach would allow a plaintiff to toll the statute of limitations *indefinitely* merely by asserting a lack of knowledge of the legal basis for making a claim. For that very reason, the court in *Moody* rejected opposing counsel's approach to the running of the statute of limitations in a whipsaw case, observing that opposing counsel's view of when a claim accrues "would effectively eviscerate any

---

[1] *See also Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003) (holding that the limitations period on an ERISA claim begins running, at the latest, when the plaintiff has "knowledge of the *facts or transaction* that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a *cognizable legal claim* under ERISA in order to trigger the running of the statute") (emphasis added); *Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 343 (E.D. Tex. 2003) (holding that lack of knowledge of a cause of action under ERISA did not toll the running of the statute of limitations; "plaintiff need only know the facts that would support a claim"); *Travis v. Knappenberger*, 204 F.R.D. 652, 653, 656-57 (D. Or. 2001) (explaining that "the discovery rule applies only to facts and not to the discovery of a legal basis for a claim").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

operative statute of limitations, and permit the assertion of clearly stale claims."

*Moody*, *supra*, at 26.  *See also Redmon v. Sud-Chemie Inc. Ret. Plan*, 547 F.3d 531,

540 (6th Cir. 2008) ("If [plaintiff] is correct, her claim might never accrue and the

statute of limitations would never expire, contrary to the policy of repose.") (citation

omitted); *Miller*, 475 F.3d at 522 ("[P]laintiff could . . . trigger the statute of

limitations at [her] own discretion, creating an indefinite limitations period.").

### B.    A One-Year Limitations Period Applies.

In ERISA benefits actions in which the limitations period is not fixed by

contract, ERISA borrows the statute of limitations for the "most analogous" state law

claim.  *See Wetzel v. Lou Ehlers Cadillac Group*, 222 F.3d 643, 646 (9th Cir. 2000)

(en banc).  Moreover, because this case is governed by federal law, Ninth Circuit law

governs the choice of which state's law is borrowed, notwithstanding the fact that this

case was transferred from Ohio.  *See Newton v. Thomason*, 22 F.3d 1455, 1460 (9th

Cir. 1994); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

Under Ninth Circuit law, this Court should borrow a statute of limitations from

the forum state of Arizona.  *See Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th

Cir. 1993) ("In an ERISA case, we ordinarily borrow the forum state's statute of

limitations[.]"); *Pierce County Hotel Employees v. Elks Lodge*, 827 F.2d 1324, 1328

(9th Cir. 1987) (same).  Arizona is also the state with the most significant relationship

to the dispute:  the largest number of class members reside in Arizona, the Plan is

administered in Arizona, Avnet is headquartered in Arizona, and the Plan's choice of

law provision selects Arizona law.  Stmt. ¶¶ 13-17.  By contrast, only a tiny percentage

of class members reside in Ohio.  Stmt. ¶ 15.  For these reasons as well, Arizona law

supplies the limitations period in this action.  *See, e.g.*, *Wang Labs.*, 990 F.2d at 1128-

29; *Berger v. AXA Network LLC*, 459 F.3d 804, 809-14 (7th Cir. 2006).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As shown below, Arizona would apply a one-year limitations period to the types of claims asserted by Plaintiffs.  Moreover, for certain members of the Lump Sum Class, a one-year limitations period is fixed by contract.

> **1.   A One-Year Limitations Period Applies To Claims For Breach Of Employment Contract.**

In ERISA benefits actions, courts often borrow the limitations period for breach of contract claims.  *See Chuck*, 455 F.3d at 1031.  Here, Arizona has *two* limitations periods for contract claims – a one-year period for "breach of an oral or written employment contract including contract actions based on employee handbooks or policy manuals," Ariz. Rev. Stat. § 12-541(3), and a six-year period for general breach of contract actions not subject to a more specific statute, *see* Ariz. Rev. Stat. § 12-548. The one-year limitations period of § 12-541(3) is the one that applies in this action.

When a contract action may be governed by either a general or a more specific statute of limitations, Arizona courts apply the more specific statute.  *See W.J. Kroeger Co. v. Travelers Indem. Co.*, 541 P.2d 385, 387 (Ariz. 1975).  Consistent with this principle, Arizona courts apply § 12-541(3) to "all contracts defining specific responsibilities of the employer to the employee."  *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi*, 183 P.3d 544, 548 (Ariz. Ct. App. 2008).  Plaintiffs' claims fall within this scope:  Plaintiffs contend that Defendants have breached their obligations under a pension plan "defining specific responsibilities of the employer to the employee."  *Id.* Indeed, the pension benefits that Plaintiffs seek in this action are simply a form of "deferred compensation" from their employer.  *Joseph Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 1002 (7th Cir. 1993).

Federal court precedent supports this conclusion.  Both of the federal appeals courts to consider the question have held that, where a state has both a general statute of limitations for breach of contract actions and a more specific statute for breach of employment contracts, the more specific statute is the one that governs in an ERISA

1
2

benefits action.  *See Syed v. Hercules, Inc.*, 214 F.3d 155 (3d Cir. 2000); *Adamson v. Armco, Inc.*, 44 F.3d 650 (8th Cir. 1995).

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

In *Syed*, the Third Circuit held that Delaware's one-year limitations period for employment disputes, rather than its three-year limitations period for general breach of contract claims, governed the plaintiff's claim for additional disability benefits.  *See* 214 F.3d at 159-61.  The court explained that the plaintiff's claim "was squarely based on his prior employment" because "[i]n order to qualify under the long term disability plan, [plaintiff] had to be a 'regular, full-time non-represented employee of the Company.'"  *Id*. at 161.  Similarly, in *Adamson*, the Eighth Circuit held that Minnesota's two-year limitations period for wage claims, rather than its six-year limitations period for general breach of contract claims, governed an ERISA benefits action.  *See* 44 F.3d at 652-53 (observing that "the more specific" of the limitations provisions should govern and that Minnesota courts "broadly" apply the two-year limitations period for wage claims to "all damages arising out of the employment relationship").  *See also Redmon*, 547 F.3d at 536 (approving of *Syed* and *Adamson*); *Lester v. Framatome ANP*, No. 6:06cv00015, 2008 U.S. Dist. Lexis 19131, at *5-7 (W.D. Va. Mar. 12, 2008) (following *Syed*).

18
19
20
21
22
23
24
25

Finally, in *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067 (D. Ariz. 2002), a court in this District specifically applied the one-year limitations period of Arizona § 12-541(3) to a benefits claim.  The plaintiff in *Fallar* alleged, among other things, that his employer had committed a breach of contract by failing to provide him with certain disability benefits.  *See* 202 F. Supp. 2d at 1072-73.  The court rejected the plaintiff's claim for "failure to . . . pay benefits" as pre-empted by ERISA, *id*. at 1074-75, but held in the alternative that the benefits claim was barred by the one-year limitations period of § 12-541(3), *id*. at 1077.

26
27
28

Under *Fallar*, *Syed*, *Adamson*, and *Redhair*, the same one-year limitations period applies in this action.  While Plaintiffs purported to cite contrary authority in

1
2
earlier pleadings, that authority is inapplicable:  it fails to discuss § 12-541(3) or any analogous statute of limitations for breach of employment contracts.[2]

3
### 2.    A One-Year Limitations Period Applies To Statutory Claims.

4
5
6
7
8
9
10
11
12
13
14
A one-year statute of limitations is also appropriate under Ariz. Rev. Stat. § 12-541(5), which provides a one-year limitations period for actions that seek to impose a "liability created by statute."  Arizona courts apply § 12-541(5) where a statute alters the common law and creates a cause of action that "would not exist but for the statute."  *Day v. Schenectady Disc. Corp.*, 611 P.2d 568, 571 (Ariz. Ct. App. 1980). Applying the same "but for" standard, the Sixth Circuit recently concluded that a state's limitations period for "liability created by statute" applies to benefit claims that are based on "ERISA's statutory protections" rather than on the contractual promises made in a plan document.  *Redmon*, 547 F.3d at 534-38.  *Accord Fallin*, 521 F. Supp. 2d at 594-95; *Daniels v. Life Ins. Co. of N. Am.*, No. 5:08-CV-137-R, 2009 U.S. Dist. Lexis 17229, at *6-8 (W.D. Ky. Mar. 6, 2009).

15
16
17
Here, Plaintiffs do not seek to enforce the contractual promises made in the Plan document.  Instead, Plaintiffs argue that ERISA *overrides* the terms of the Plan

18

19
20
21
22
23
24
25
26
27
[2] Arizona adopted the current version of § 12-541(3) in 1996.  *See Taylor v. Graham County Chamber of Comm.*, 33 P.3d 518, 529 n.7 (Ariz. Ct. App. 2001).  Prior to 1996, the current § 12-541(5) was designated as § 12-541(3).  *See* Ariz. Rev. Stat. § 12-541 (1995).  As far as Defendants are aware, *Fallar* is the only decision to consider the application of the current § 12-541(3) to a benefits claim.  An unpublished decision invoked by Plaintiffs – *Loewy v. Ret. Comm.*, No. 03-CV-2284-PHX-FJM, Dkt. 103 (D. Ariz. Mar. 30, 2005) – does not do so.  There, the question of whether ERISA actions in Arizona are subject to § 12-541(3) was neither briefed by the parties nor addressed by the Court.  *See Loewy*, Dkts. 19, 38, 62, 69, 103.  *Loewy* also pre-dates the Arizona Court of Appeals' *Redhair* decision on the scope of § 12-541(3).  Accordingly, the *Loewy* decision's "unstated assumptions on non-litigated issues are not precedential holdings binding future decisions."  *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985).

28

and mandates a whipsaw calculation that the Plan never promised.[3]  Accordingly, under *Redmon*, Plaintiffs are subject to the one-year limitations period of § 12-541(5).[4]

### 3.    For Certain Class Members, A One-Year Limitations Period Is Fixed By Contract.

For named Plaintiff Moriarty and 447 other class members, a one-year limitations period is fixed by contract rather than by operation of law.

In December 1996, Plaintiff Moriarty entered into a written agreement with Avnet covering, among other things, "claims for benefits" arising under "employee benefit or pension plan[s]" offered by the company.  Stmt. ¶¶ 18-19.  At least 447 other members of the Lump Sum Class signed identical agreements ("Agreements").  Stmt. ¶ 23.  While much of the text of the Agreements provides for arbitration of any disputes arising between the parties, the Agreements also set forth an independent obligation to give Avnet written notice of any claim against the company or its benefit plans "within one (1) year" after the employee "first has knowledge of the event giving rise to the claim."  Stmt. ¶¶ 20, 24.  The Agreements further state that, in the absence of timely written notice of a claim, the claim "shall be void and deemed waived" even if the statute of limitations provided by statute is longer than a year.  Stmt. ¶ 20.

This one-year contractual limitations period is enforceable under ERISA unless it is "unreasonable or fundamentally unfair."  *Wang Labs.*, 990 F.2d at 1128-29.  *Accord Med. Mut. of Ohio v. k. Amalia Enters.*, 548 F.3d 383, 390-91 (6th Cir. 2008);

---

[3] *See* Dkt. 14, Pl.'s Opp. Mot. Change Venue, at 18 ("Plaintiff is not trying to enforce the terms of the Plan – her claim is that the Plan's terms are **illegal** as a matter of federal pension law.") (emphasis in original); *id.* at 18 n.22 (asserting a "lack of understanding on Defendants' part of the fundamental difference between a statutory dispute as to the legality of a plan's benefit formula . . . and a contract dispute").

[4] While the unpublished decision in *Loewy* (*see supra* n.2) declined to apply § 12-541(5) to an ERISA claim, *Loewy* was decided without the benefit of the on-point 2008 decision in *Redmon*.

1
2
3
4
5
6
7
8
9
10
11
12

*Doe v. Blue Cross & Blue Shield*, 112 F.3d 869, 874-75 (7th Cir. 1997).  A one-year limitations period can hardly be rejected as "unreasonable or fundamentally unfair" when the very same limitations period applies to ERISA claims by default under the law of more than one state.  *See, e.g., Syed*, 214 F.3d at 159-161 (Delaware); *supra* at 6-9 (Arizona).  Moreover, federal courts have consistently rejected the argument that one-year limitations periods are unreasonable or "inconsistent with the policy of ERISA." *Syed*, 214 F.3d at 161 (applying one-year statute of limitations).  *Accord Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 396-97 (9th Cir. 1998) (applying one-year California statute of limitations to ERISA § 510 claim); *Lester*, 2008 U.S. Dist. Lexis 19131, at *5-7 (enforcing one-year limitations period).  *See also Northlake Reg'l Med. Ctr. v. Waffle House Sys. Benefit Plan*, 160 F.3d 1301, 1303-04 (11th Cir. 1998) (enforcing 90-day contractual limitations period).

13
14
15
16
17
18

Plaintiff Moriarty acknowledged at her deposition that the "event giving rise to [her] claim" was the receipt of her lump sum payment.  Stmt. ¶ 25.  The Agreement therefore required Moriarty to give Avnet written notice of her claim within a year of receiving her lump sum payment, but neither she nor any other class member provided such notice.  Stmt. ¶¶ 20, 24-26.  As a result, the claims of the class members who entered into Agreements are barred by a contractual limitations provision.

19

## II.    The Restricted Participant Claims Lack Merit.

20
21
22

Plaintiffs Cohen, Dison, Phillips, and Small, as representatives of the Restricted Participant Class, challenge the Plan's restriction on the eligibility of certain Plan participants to receive a lump sum payment.  These claims fail as a matter of law.

23

### A.    Plaintiffs' Claims Are Time-Barred.

24
25
26

The Restricted Participant claims are time-barred because the Plan clearly repudiated any alleged obligation to offer lump sum payments to Restricted Participants long before this lawsuit was filed.

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plan Section 6.10B states that participants are ineligible to receive lump sum payments if the present value of the retirement annuity that a participant had earned under the pre-1994 Plan is larger than the participant's account balance in the Cash Balance Plan.  Stmt. ¶¶ 60, 71.  Each member of the Restricted Participant Class, including the four named Plaintiffs, received a Summary Plan Description ("SPD") that informed them of this restriction in December 1994.  Stmt. ¶¶ 32, 95, 98-99, 101-02, 107-08, 110.  The SPD made unequivocally clear that the Plan had no intention of offering lump sum payments under the circumstances described in Section 6.10B, thus triggering the limitations period for a challenge to the restriction.  *See Romero v. Allstate Corp.*, 404 F.3d 212, 222-25 (3d Cir. 2005); *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 592-94 (S.D.N.Y. 2009); *Hirt v. Equitable Ret. Plan*, 285 F. App'x 802, 804 (2d Cir. 2008) ("the distribution of the 1992 SPD constituted a clear repudiation of any pre-amendment benefits that plaintiffs could possibly claim.").

Furthermore, Plaintiffs Dison, Phillips, and Cohen each received individual letters from the Plan in 1996 and 1997 informing them that they were ineligible for a lump sum payment.  Stmt. ¶¶ 100, 103-106, 111.  Plaintiffs Dison and Phillips acknowledged at their depositions that they understood as a result of these letters that the Plan was refusing to offer them a lump sum payment.  *Id.* ¶¶ 100, 103.  Plaintiff Small likewise testified that he most likely understood by 1995 that the Plan would not allow him to elect a lump sum payment.  Stmt. ¶ 109.  Because the Plan clearly repudiated any alleged obligation to offer lump sum payments to Restricted Participants over ten years before this lawsuit was filed, the Restricted Participant claims are time-barred under the analysis in Part I above.

**B.     The Restricted Participant Claims Fail On The Merits.**

Plaintiffs allege that if they prevail on their whipsaw claims, then it necessarily follows that Plan Section 6.10B is unlawful and overridden by ERISA.  Am. Compl. ¶¶ 12(c),51-57.  Defendants already have demonstrated in their cross-motion for

judgment on the pleadings that this argument lacks merit:  Section 6.10B is lawful *regardless* of whether Plaintiffs prevail on their whipsaw claim.  *See* Dkt. 136 at 7-9.

Plaintiffs also allege that the Section 6.10B lump sum restriction was adopted in violation of ERISA's anti-cutback rule.  Am. Compl. ¶¶ 6, 58.  According to Plaintiffs, Avnet *initially* adopted a cash balance plan *without* a restriction on lump sum payments in September 1993, and then added a restriction on lump sum payments six months later in violation of the anti-cutback rule.  Am. Compl. ¶¶ 6, 33, 51, 58; *see also* Stmt. ¶ 62.  This argument fails because the cash balance plan and its restriction on lump sum payments were adopted at the very same time.

Plaintiffs rely on the fact that the Avnet Pension Committee met and gave its approval to a management recommendation to convert the Plan to a cash balance plan in September 1993.  Stmt. ¶ 65; Am. Compl. ¶¶ 6, 33, 51, 58.  The Pension Committee, however, had no authority to amend the Plan.  ERISA requires plans to specify in writing the procedures by which they may be amended.  *See* ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3) (a plan must "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan").  Here, the Plan vested the Avnet Board of Directors with sole authority to amend the Plan.  Stmt. ¶¶ 64, 67.  Thus, contrary to Plaintiffs' assertions, the Pension Committee's September 1993 approval of a proposal to adopt a cash balance plan had no force or effect until it was ratified by the Board of Directors.  *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) ("[A]mendment procedures, once set forth in a benefit plan, constrain the employer from amending the plan by other means."); *id.* at 938 & n.5 (ERISA requires "that companies adhere specifically to chosen amendment procedures" and "[w]here an ERISA plan already exists, a given document can only be considered 'a plan document' if certain formal requirements are met").

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Plan was converted into a cash balance plan, at the earliest, on March 23, 1994, when the Board of Directors adopted a resolution approving the conversion. Stmt. ¶¶ 63, 68.  The Board simultaneously approved the restriction on lump sum payments that Plaintiffs challenge in this action.  *Id.*  As a result, participants never acquired an unrestricted right to a lump sum payment.  Rather, the lump sum *option* provided by the cash balance plan and the lump sum *restriction* challenged by the Plaintiffs were approved at the same time in the same act by the only entity authorized to amend the Plan.  *Id.* ¶¶ 63-68.  There was never any plan amendment that "cut back" a right previously held by Plan participants.

### C.   Plaintiffs' Claims Fail For Lack Of Causation And Injury.

Plaintiffs did not make clear in their class certification motion that they seek money damages for the Restricted Participant Class.  *See* Dkt. 141, Class Cert. Order at 9 (certifying a Restricted Participant Class under Rule 23(b)(1) or (2) because this class "seeks only declaratory and injunctive relief").  Plaintiffs' expert report, however, reveals that the Restricted Participants seek money damages of over $27 million.  Stmt. ¶ 80.  As shown below, all or most of the Restricted Participants' claims – both monetary and non-monetary – fail for lack of causation and injury.

Defendants are entitled to summary judgment against all class members for whom Plaintiffs fail to adduce *prima facie* evidence that the class member would have elected a lump sum payment "but-for" the Section 6.10B restriction on lump sums.  By definition, the lump sum restriction affected only those individuals who would have elected a lump sum in the absence of the restriction.  Class members who would *not* have elected a lump sum in the absence of the restriction were not "injured" by the restriction and therefore have no right to relief from the restriction.  *See Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 120 (2d Cir. 2009) (ERISA "does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach"); *Drutis v.*

1
2
3
4
5
6
7
8

*Rand McNally & Co.*, 499 F.3d 608, 611 (6th Cir. 2007) (finding no right to bring ERISA claim where plaintiffs "suffered no injury as a result of the provisions" of the plan "[b]ecause their benefits were not determined by the challenged" provisions, and thus their alleged injury "is hypothetical at best").  *See also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 133-34 (3d Cir. 2000) ("[T]he purpose of granting equitable relief under ERISA is simply to place 'the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing.'") (quoting *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998)).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Furthermore, class members who would have left their money in the Plan regardless of Section 6.10B are foreclosed by the Pension Protection Act ("PPA") from seeking a whipsaw calculation.  The PPA abolished the whipsaw calculation for plan participants who receive their benefit distributions on or after August 17, 2006.  *See* Dkt. 141, Class Cert. Order at 2 n.1.  As Plaintiffs have acknowledged, the PPA's whipsaw provisions extend to participants who stopped working *before* August 17, 2006 if they elected to defer the receipt of a lump sum payment until *after* that date.  *See* Dkt. 66 at 16 (seeking dismissal of whipsaw claim by participant who left Avnet in 2000 but who did not elect a lump sum payment prior to the PPA's effective date); Dkt. 70 at 1 n.1 (stating that Plaintiffs assert no such whipsaw claims).  While a participant who would have *elected* a lump sum payment before August 17, 2006 if not for Section 6.10B might argue that the Plan should be estopped from relying on the PPA's whipsaw provisions, a participant who would have *declined* a lump sum payment in the absence of Section 6.10B has no such argument.[5]  The latter participants are foreclosed by the PPA from seeking a whipsaw calculation – and

25
26
27

[5] *See Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) ("An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, *reasonable and detrimental reliance upon the representation* and extraordinary circumstances.") (emphasis added).

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

likewise are foreclosed from relying on a whipsaw theory to argue that they are eligible for a lump sum payment.

Named Plaintiffs Dison and Small, at a minimum, cannot meet their burden of proving that they would have elected a lump sum payment but-for Section 6.10B. Plaintiff Dison admitted at his deposition that he does not know what he would have done if the lump sum restriction had not existed and that he would be "guessing" if he tried to say today what he would have done in the past.  Stmt. ¶ 90.  Similarly, Plaintiff Small admitted that he did not know whether he would have elected a lump sum payment if not for Section 6.10B.  *Id.* ¶ 89.  Plaintiff Small also admitted that, far from being injured by Section 6.10B, he likely would be *worse off* if Section 6.10B had never existed and, as a consequence, he had taken a lump sum payment instead of leaving his benefits in the Plan.  Stmt. ¶ 93 & n.1.[6]  Summary judgment should be granted against these Plaintiffs and all other members of the Restricted Participant Class who, in response to this motion, fail to produce evidence sufficient to meet their burden of proving that they were actually injured by Section 6.10B.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

In the alternative, the Court should decertify the Restricted Participant Class. Many if not most Plan participants who are eligible for an immediate lump sum payment do not elect one.  *See* Stmt. ¶ 81.  Moreover, there are numerous individuals

---

[6] Likewise, Plaintiffs Dison and Phillips testified at their depositions that they did not know whether they were better off or worse off because of the Section 6.10B restriction.  Stmt. ¶ 94 & n.2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

who (i) originally were subject to the Section 6.10B restriction, (ii) later were told that they no longer were restricted (as a result of interest rate changes), and (iii) did not elect a lump sum payment after being told that they were unrestricted.  *See* Stmt. ¶ 87. This shows, at a minimum, that Defendants are entitled to try to prove participant-by-participant that a given Restricted Participant would not have elected a lump sum payment in the absence of Section 6.10B.  Thus, unless Defendants prevail on a summary judgment theory common to all class members, the Court should decertify the Class on the ground that individual issues of causation, injury, and reliance preclude class treatment of the Restricted Participant claims.[7]  Moreover, the Court should be guided by Rule 23(b)(3) – not Rule 23(b)(1) or (2) – in conducting its decertification analysis.  This is because, contrary to the impression created by the Restricted Plaintiffs at the class certification stage, these Plaintiffs seek money damages and not just "injunctive or declaratory relief."  *See supra* at 13.

**D.    Individuals For Whom No Eligibility Determination Was Made Are Not Class Members.**

Even if the Court were to continue to allow the Restricted Participants to proceed as a class, it should clarify that more than 500 individuals whom Plaintiffs

---

[7] *See, e.g.*, Dkt. 92, Defs.' Opp. Class Cert., at 12-13 (collecting cases holding that individual issues of reliance and injury preclude class certification); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, is inherently tentative.") (quotation and footnote omitted); *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004) (denial of class certification appropriate where "individualized reliance issues related to proof of causation would predominate"); *Cent. Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 189 (4th Cir. 1993) ("Should [manageability or other] concerns render the class mechanism ineffective, the district court must be prepared to use its considerable discretion to decertify the class[.]"); *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009) ("'[C]ourts are required to reassess their rulings as the case develops,' and 'must define, redefine, subclass, and decertify as appropriate in the progression of the case from assertion to facts.'") (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

seek to include in the Class do not meet the class definition.  At Plaintiffs' request, the Court defined the Class as persons who were not offered a lump sum "because the Plan determined that the present value of their pre-1994 benefit exceeded their Cash Balance Account."  Dkt. 141 at 10.  The Plan made a "determination" of whether a participant's pre-1994 benefit exceeded his or Cash Balance Account *only* if the participant made a pre-age-65 inquiry about receiving benefits.  Stmt. ¶¶ 82-85.  For participants who made no such inquiry, *the Plan never determined whether the participant was eligible for a lump sum.  Id.* ¶ 85.  These participants therefore fall outside the Class.  The reason they did not receive a lump sum payment is because they never asked for one; it is not "because the Plan determined that the present value of their pre-1994 benefit exceeded their Cash Balance Account."

Plaintiffs nonetheless attempt to treat as part of the Class more than 500 individuals who never made a pre-age-65 inquiry about receiving benefits.  Stmt. ¶¶ 80, 84.  These individuals are not part of the Class under the plain terms of this Court's class certification order.  *See Lyell v. Farmers Group Inc. Employees' Pension Plan*, No. CV 07-1576-PHX-JAT, 2008 U.S. Dist. Lexis 107332, at *7-8 (D. Ariz. Dec. 3, 2008) ("[I]n order to maintain a class action, the class must be adequately defined and clearly ascertainable.  The class cannot be overly broad, amorphous, or vague, but must be susceptible to a precise definition.  A class must be precisely defined so the Court can determine who will be bound by the judgment.") (citations omitted).

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Defendants on all remaining claims in the case.

1

2
                Respectfully submitted,

3

4
                s/ D. Lewis Clark, Jr.

5
                D. Lewis Clark, Jr. (Arizona Bar # 025968)
                Brian A. Cabianca (Arizona Bar # 016410)

6
                Squire, Sanders & Dempsey L.L.P.
                Two Renaissance Square

7
                40 North Central Avenue, Ste 2700

8
                Phoenix, Arizona  85004-4498
                (602) 528-4000

9
                (602) 253-8129 (facsimile)

10
                lclark@ssd.com
                bcabianca@ssd.com

11

12
                Robert D. Wick (*Pro Hac Vice*)
                Frederick G. Sandstrom (*Pro Hac Vice*)

13
                Covington & Burling LLP
                1201 Pennsylvania Avenue, N.W.

14
                Washington, D.C.  20004

15
                (202) 662-5487
                (202) 778-5487 (facsimile)

16
                rwick@cov.com

17
                *Attorneys for Defendants*

18
September 15, 2009

19

20

21

22

23

24

25

26

27

28

1

2 **CERTIFICATE OF SERVICE**

3         I hereby certify that on September 15, 2009, a true and correct copy of

4 the foregoing Defendants' Motion For Summary Judgment And Supporting

5 Memorandum Of Law, with supporting affidavits and exhibits, and Defendants'

6 Statement of Facts, were filed with the Court's CM/ECF system and hand-served on

7 all counsel for Plaintiffs:

8

9                               s/ D. Lewis Clark, Jr.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28